The Honorable John Dawson State Representative P.O. Box 336 Camden, Arkansas 71701-0036
Dear Representative Dawson:
This is in response to your request for an opinion on several questions concerning the use by the public of certain "river lakes" found in southern Arkansas. You have posed five questions, which will be set out below and answered in the order posed.
Your first question is as follows:
 Are the numerous `river lakes' found in southern Arkansas public or private waters? These are natural lakes, formed, replenished, and restocked with fish by the flooding Ouachita River. During most years, however, the lakes are not connected to the river and are accessible only by crossing over the adjacent land.
The question of whether these "river lakes" are public or private waters will depend upon whether each of them is "navigable" in a legal sense. I have enclosed a copy of Op. Att'y Gen. 89-103, which discusses the test for "navigability." This issue is a factual one with regard to each body of water. Additionally, the question of whether the public has acquired any prescription rights to the "river lakes" is also a question of fact.
Your second question is as follows:
 If the river lakes are public waters, where is the high water mark that determines the boundaries of the State's and any contiguous landowner's interest?
As you have noted, the state holds title to the lands in the bed of all navigable waters below the ordinary high water mark and the riparian owner holds all of the property rights above that line. Hayes v. State, 254 Ark. 680, 496 S.W.2d 372 (1973). The court in Hayes, citing St. Louis, I.M.S. Ry. Co. v. Ramsey,53 Ark. 314, 13 S.W.2d 931 (1890), outlined the test to be used in determining the high water mark as follows:
 The banks of a river are those elevations of land which confine the waters when they rise out of the bed; and the bed is that soil so usually covered by water as to be distinguishable from the bank by the character of the soil, or vegetation, or both, produced by the common presence and action of flowing water. But neither the line of ordinary high-water mark, nor of ordinary low-water mark, nor of a middle stage of water, can be assumed as the line dividing the bed from the banks. This line is to be found by examining the bed and banks, and ascertaining where the presence and action of water are so common and usual and so long continued in all ordinary years, as to mark upon the soil of the bed a character distinct from that of the banks, in respect to vegetation, as well as in respect to the nature of the soil itself. Whether this line between the bed and the banks will be found above or below, or at a middle stage of water, must depend upon the character of the stream. * * * But in all cases the bed of a river is a natural object, and is to be sought for, not merely by the application of any abstract rules, but as other natural objects are sought for an found, by the distinctive appearances they present; the banks being fast land, on which vegetation, appropriate to such land in the particular locality, grows wherever the bank is not too steep to permit such growth, and the bed being soil of a different character and having no vegetation, or only such as exists when commonly submerged by water.
254 Ark. at 682-683.
Your third question is as follows:
 Does the public have the right to cross any adjacent property to have access to the river lakes if they are public waters?
The answer to this question is "no," absent the existence of a prescriptive right acquired by the public. I have attached a copy of Op. Att'y Gen. 91-187, which discusses this issue and cites State v. McIlroy, 268 Ark. 227, 595 S.W.2d 659 (1980) as stating: "[i]t is not disputed that riparian landowners on a navigable stream have a right to prohibit the public from crossing their property to reach such a stream." 268 Ark. at 238.
Your fourth question is as follows:
 If the public has used for many years a private road crossing the land adjacent to a river lake to gain access, has the public acquired any right to use the road?
The answer to this question will depend upon the facts surrounding the public use. Opinion 91-187 (enclosed herein) addresses this issue and sets out the factors which will determine whether any prescriptive right has been acquired. A primary determinant is whether the use of the road is by permission of the owner, or rather adverse to the interest of the owner, and under claim of right. In the former situation, no prescriptive right is acquired. In the latter, a prescriptive right may have been acquired, assuming all other factors have been met.
Your fifth and final question is as follows:
 Can hunting clubs, which have leased hunting rights from landowners, post the land adjacent to public waters in order to prevent public access?
Although I have found no Arkansas case precisely addressing this question, it is my opinion that the answer is "yes." Such lessees may post land adjacent to public waters (to the extent the land is the subject of their lease) to prevent public access to or through the land. Act 35 of 1989 provides that the owner or lessee of any forest lands (A.C.A. 18-11-404 (Cum. Supp. 1991)), or other lands (A.C.A. 18-11-405), may post the same and thereby prohibit persons from entering the land for "recreational purposes," without the written permission or consent of the owner or lessor. This statute, in conjunction with the Supreme Court's statement in McIlroy, that "riparian landowners on a navigable stream have a right to prohibit the public from crossing their property," in my opinion mandate an affirmative answer to your question.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh